Ronald **COLBERT**, Plaintiff,

v.

Shirley S. **CHATER**, Commissioner of Social Security [1], Defendant.

No. 94 Civ. 3510 (JGK).

United States District Court, S.D. New York.

July 24, 1995.

---

1. Pursuant to Public Law No. 103–296, Sec. 105(a)(1) and Sec. 106(d) and 106(f) the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995, and the Court may enter an order for substitution of parties. Accordingly, Shirley S. Chater, Commissioner of Social Security, has been substituted as defendant in this action for the Secretary of Health and Human Services and the title Commissioner has been used for any references to the Secretary throughout this opinion.

Westchester/Putnam Legal Services, Inc., White Plains, NY by Elyse J. Factor, for plaintiff.

United States Atty., S.D.N.Y., New York City by Lorraine S. Novinski, for defendant.

## OPINION AND ORDER

KOELTL, District Judge:

The issue in this case is whether substantial evidence supports the finding by the Commissioner of Social Security ("Commissioner") that the plaintiff, Ronald Colbert, is not entitled to Supplemental Security Income ("SSI") benefits because he is not disabled within the meaning of that program. After listening to the sworn testimony of the plain-

tiff and reviewing all the medical records that were submitted, the Administrative Law Judge ("ALJ") determined that the plaintiff was not eligible for supplemental security income. (R. 18). The ALJ determined that, while the plaintiff had a long history of alcohol and drug abuse as well as certain other impairments, his impairments did not prevent him from performing his past relevant work and that he was not under a disability as defined in the Social Security Act. (R. 17). The Appeals Council of the Social Security Administration denied the request to review the ALJ's decision. (R. 4). This appeal followed.[2] For reasons explained below, after reviewing the administrative record, this Court concludes that there is substantial evidence supporting the Commissioner's determination that the plaintiff is not disabled within the meaning of the SSI Program.

## I.

The plaintiff, Ronald Colbert, was born on July 27, 1947 and was forty-six years old at the time of the hearing before the ALJ. (R. 27). He has completed high school, and has been employed as a machinist, short order cook, cabinet maker and production color mixer. (R. 27, 29, 123). He has had a history of alcohol and drug abuse including numerous hospitalizations for detoxification between 1986 and 1991. (R. 150–56, 179–86, 194–209, 223–29). However, as of the hearing before the ALJ on October 6, 1993, the plaintiff testified that he had not had a drink or used any drugs for twenty-two months. (R. 37). The plaintiff also has a history of bronchiectasis and was treated for tuberculosis. (R. 47, 179, 234).

On February 11, 1992, the plaintiff filed an application for Supplemental Security Income benefits based on a claimed disability under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1382 *et seq.* (1992 & Supp.1994), which provides such benefits to the aged, the blind and the disabled. (R. 47).

---

**2.** This appeal is taken pursuant to 42 U.S.C. § 1383(c)(3) which authorizes judicial review of determinations of the Commissioner of Social Security concerning the Supplemental Security Income program, in accordance with 42 U.S.C.

§ 405(g). Both the plaintiff and the defendant have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

The plaintiff claimed he was disabled beginning on January 8, 1990 due to tuberculosis, alcohol dependency and bronchitis. (R. 47). The application was denied by notice dated May 15, 1992. (R. 68). The denial was based on medical reports by Dr. Duncan McCollester, Dr. David Pulver, St. Vincent's Hospital, St. Agnes Hospital, and St. Joseph's Hospital. (R. 104). The denial concluded that the plaintiff's condition was not severe enough to keep him from working and that, while the plaintiff had tuberculosis and bronchitis, his conditions had stabilized with treatment and did not prevent him from performing his past relevant work. (R. 104). The plaintiff filed a timely notice for reconsideration which was denied by notice dated November 18, 1992. (R. 107). He then requested a hearing on the denial. (R. 111).

On October 6, 1993, a hearing was held by ALJ John W. Whittlesey in White Plains, New York to determine whether the plaintiff is disabled under the Act. The ALJ found that the plaintiff met the disability insured status requirements on January 8, 1990, the date the plaintiff stated he became unable to work, and continued to meet them through December 31, 1992. (R. 17). The ALJ concluded that the plaintiff was not under a "disability" as defined in the Social Security Act at any time through the date of the decision. 20 C.F.R. §§ 404.1520(e) and 416.920(e).[3] On December 17, 1994, the plaintiff requested a review of ALJ Whittlesey's decision by the Social Security Administration's Appeals Council. (R. 8). The Appeals Council denied the request on March 9, 1994. (R. 4). ALJ Whittlesey's decision therefore became the final decision of the Secretary with respect to the February 11, 1992 application for supplemental benefits.[4] The plaintiff filed the complaint in this action on May 12, 1994.

## II.

■ A court may reverse a finding of the Commissioner only if that finding is not sup-

ported by substantial evidence in the record. 42 U.S.C. § 405(g) (1991) (made applicable to SSI cases by 42 U.S.C. § 1383(c)(3) (1992)). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *Diaz v. Shalala,* 59 F.3d 307, 311–13 (2d Cir.1995); *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991).

The Commissioner has established a five step sequential evaluation process for evaluating disability claims. *See* 20 C.F.R. §§ 404.1520 and 416.920.

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers from such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; . . . . Assuming the claimant does not have a listed impairment, the forth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. . . . [T]he claimant bears the burden of proof as to the first four steps, while the [Commissioner] must prove the final one.

---

**3.** Both §§ 404.1520 and 416.920 explain the process by which the Commissioner determines whether a claimant is disabled. Section 404.1520 applies to applications for disability insurance, while § 416.920 concerns claims for SSI disability benefits.

**4.** Accordingly, references to the determinations and findings that are at issue in this appeal are referred to, interchangeably, as those of the ALJ and those of the Commissioner.

*Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982); *see also Diaz,* 59 F.3d at 311 n. 2.

The ALJ properly followed the above process. He first found that the plaintiff had not engaged in substantial gainful activity since January 8, 1990. (R. 13). He then determined, based on the record before him, that while the plaintiff's impairments are considered "severe" as defined in 20 C.F.R. § 404.1521 and § 416.921, he does not have an impairment or combination of impairments that met or equaled any listed impairments.[5] (R. 13). The plaintiff's impairments are severe because they imposed "more than slight limitations on his ability to engage in basic work-related activities." (R. 13). The ALJ considered the plaintiff's history of alcohol and substance abuse and his psychological evaluation during his last detoxification at St. Vincent's Hospital from December 16, 1991 to January 6, 1992. (R. 13–14). He considered the plaintiff's testimony that he had been alcohol free for twenty-two months and was only receiving medical treatment for bronchitis. (R. 14.)

Medical records indicated that the plaintiff was diagnosed with tuberculosis in January, 1990, but had been treated and that the disease no longer interfered with his ability to perform day to day activity or to engage in medium work activity as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c).[6] (R. 14, 16). The medical reports received by the ALJ also indicated that there was no evidence of any musculoskeletal impairment until June, 24, 1992. (R. 15). Since then, while plaintiff has been authorized to use a cane, ranges of motion of his spine and extremities were normal except for his feet, which both showed an increased range of motion. (R. 15). After reviewing all the available medical evidence, the ALJ concluded that the plaintiff's impairment did not meet or equal a listed impairment.

Since the plaintiff did not have a condition that met or equaled a listed impairment, it was necessary to determine the plaintiff's residual functional capacity for work activity. The ALJ followed the guidelines in 20 C.F.R. §§ 404.1529 and 416.929 to determine the plaintiff's residual functional capacity for work activity. (R. 15). In doing so, he considered complaints of pain and functional limitations in accordance with the regulations. (R. 15). The ALJ also considered the plaintiff's testimony concerning his medical problems, and medical reports. (R. 13–15). The ALJ found the plaintiff's testimony regarding his musculoskeletal limitations to be exaggerated and pointed to deficiencies in the medical records. (R. 16). He noted the plaintiff's testimony that it was difficult for him to maintain his sobriety, but also noted that the plaintiff testified he had not had a drink for a year and ten months. (R. 15).

The ALJ found that the plaintiff's past relevant work as a production color mixer, machinist, cabinet maker and short order cook did not require the performance of work-related activities which were precluded by his physical limitations and that those physical limitations do not prevent him from performing his past relevant work. (R. 16–17). The plaintiff stated that his job as a color mixer involved standing and walking and lifting and carrying up to thirty pounds. (R. 16). None of the medical evaluations precluded the plaintiff from engaging in such activity. (R. 16). The plaintiff's history of drug and alcohol abuse did not affect his capacity to perform the work he had engaged in in the past and the residual effects of his past substance abuse did not significantly reduce the range of work he is capable of performing. (R. 16).

### III.

The plaintiff raises two sets of challenges to the Commissioner's determination. First,

---

**5.** *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 for the listed impairments.

**6.** It seems apparent that the ALJ made two typographical errors in his opinion with which the plaintiff does not take issue. First, the ALJ clearly found that the medical evidence indicated the plaintiff could perform medium work but cited to 20 C.F.R. § 404.1567(b) and § 416.967(b) (light work) (R. 16). Second, the ALJ described medi-

um work as "lifting or carrying up to 25 pounds frequently and no more than 20 pounds occasionally," (R. 16), where he clearly meant occasionally lifting 50 pounds rather than 20 pounds. The ALJ specifically noted that the plaintiff's prior job as a production color mixer required him to carry up to 30 pounds and that the plaintiff retained the functional capacity to engage in his past relevant work. (R. 16.)

he alleges that the Commissioner erred by not finding that his chronic alcoholism was a disability. Second, the plaintiff argues that the Commissioner erred in failing to find that the combination of his physical and mental impairments was a disability.

■ The plaintiff argues that the Commissioner's decision to deny benefits is not supported by substantial evidence because the ALJ failed to consider evidence of at least sixteen alcohol and/or Methadone detoxification hospital admissions contained in the record. Because of this failure, the plaintiff contends that the ALJ did not comprehend "the deteriorative nature of poly-substance abuse and dependence and the ongoing and cumulative erosion of plaintiff's occupational base in twenty years leading up to the alleged onset date." (Pl.'s Br. 10–11). The plaintiff also argues that the ALJ failed to consider whether he had lost the power of self control with reference to his addiction. (Pl.'s Br. 11). In response, the defendant argues that the Commissioner's findings are supported by substantial evidence.

With respect to the plaintiff's history of detoxifications, the ALJ correctly concentrated on the time of the alleged disability while acknowledging the plaintiff's past substance abuse history.[7] The Commissioner determined that the plaintiff's alcoholism did not constitute an impairment. The plaintiff is simply incorrect in arguing that the ALJ was unaware of his history of alcoholism. The ALJ specifically noted that, "The medical records show claimant has a long history of alcohol and drug abuse." (R. 13).

There is substantial evidence to support the Commissioner's finding that the plaintiff's alcoholism was not a disabling impairment. For a substance addiction to be found disabling when it does not meet the listings of 20 C.F.R. § 404 Subpt. P, App. 1, which plaintiff does not contend that it does, it must alone or in combination with other causes prevent a person from engaging in substantial gainful activity.[8] *Wolf v. Secretary of Health and Human Services,* 612 F.Supp. 289, 291 (W.D.N.Y.1985). In the present case, the plaintiff was not impaired from working even when he was drinking. The plaintiff testified that, while he did have problems of tardiness and absences, he could still perform his job as a color mixer properly. (R. 38). Moreover, the record supported the ALJ's determination that his substance abuse was "currently in remission," since he testified that he had not had a drink in twenty-two months (R. 37). There is no reason to conclude that the plaintiff's ability to perform the same job he had previously performed while drinking would be impaired when the plaintiff has not been drinking for twenty-two months.

■ The plaintiff cites *Rutherford v. Schweiker,* 685 F.2d 60 (2d Cir.1982), to support his contention that the Commissioner must focus on whether the plaintiff has lost voluntary control over his drinking. The Commissioner properly replies that she should only focus on whether the plaintiff has lost voluntary control of his drinking in limited circumstances. (Pl.'s Br. 13). If there is a continuing interrelationship between the excess consumption of alcohol and the disability, such that termination of the former will end the latter, the issue for the Commissioner is whether the claimant has lost the voluntary ability to control his drinking. *Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982) (citing *Adams v. Weinberger,* 548 F.2d 239, 244 (8th Cir.1977)). But here there was substantial evidence to support the ALJ's determination that the past history of substance abuse, which was "currently in remission," did not result in a disabling impairment. (R. 17). Therefore, the issue of whether the plaintiff had voluntary control of his drinking did not arise. Even if it had

---

7. This case is unlike those cases which were remanded because the ALJ failed to determine if the claimant was addicted to alcohol. *See Orphey v. Secretary of Health and Human Services,* 962 F.2d 384 (5th Cir.1992); *Kellar v. Bowen,* 848 F.2d 121 (9th Cir.1988).

8. *See* 20 C.F.R. § 404.1525(e):

(E) *Addiction to alcohol or drugs.* If you have a condition diagnosed as addiction to alcohol or drugs, this will not, by itself, be a basis for determining whether you are, or are not, disabled. As with any other medical condition, we will decide whether you are disabled based on symptoms, signs, and laboratory findings. *See also* cases cited in n. 7.

arisen, the evidence showed the plaintiff's ability to control his drinking, given his twenty-two month period of abstinence.

 The plaintiff further contends that he is eligible for benefits based on a combination of his mental and physical impairments. The plaintiff claims that his memory is impaired and that he sometimes gets paranoid and has panic attacks. He argues that his physical problems, such as his clubbed foot, bronchiectasis and arthritis, some of which he has been hospitalized for, combined with his mental impairments, rise to the level of a disability.

However, there is substantial evidence to support the Commissioner's conclusion that the plaintiff's impairments are not equal to any listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 and that the plaintiff has the residual capacity to perform past relevant work. A Mental Residual Functional Capacity Assessment, taken May 12, 1992, indicates that the plaintiff is not significantly limited in any area and specifically evaluated his understanding, memory and social interaction. (R. 58–60). The defendant correctly notes that the October 3, 1990 report from United Hospital on which the plaintiff relies, (R. 197), when taken as a whole, does not demonstrate a significant mental problem. (Def.'s Reply Memo. 3–4). The United Hospital Report indicates that the plaintiff's speech was logical and coherent, and, while he did get blackouts and tremulousness from alcohol, he did not have hallucinations, his memory was intact, and he knew his paranoid ideas were just a trick of his mind. (R. 197).

Similarly, the medical reports support the conclusion that the plaintiff is physically able to perform his past work. On April 28, 1992, Dr. Pulver noted that the plaintiff had no restrictions on his residual function and had a full range of motion in all joints and no joint deformity. (R. 235). Dr. McCollester's June 24, 1992 report did note a history of clubbed right foot, an old ankle injury on the right, and marked weakness and instability in the right extremity. (R. at 255–56). However, Dr. Bagner, in his September 21, 1992 examination, stated that the plaintiff had no motor or sensory abnormalities in the upper extremities, normal flexion, extension and lateral flexion in his back, and normal range of movement in his hip and knees. (R. 250–51). He noted that the plaintiff's ankles had less than normal flexion but that he could ambulate without a cane. (R. 251). The plaintiff points to no Appendix 1 listing that is supported in the record, nor do the medical reports support a condition equal to one. There is substantial evidence to support the Commissioner's conclusion that the plaintiff can perform past relevant work. Thus, there is substantial evidence to support the ALJ's finding that the plaintiff is not disabled under the Social Security Act.

## IV.

For all of the reasons explained above, the Court finds that the decision of the Commissioner denying SSI benefits to the plaintiff is supported by substantial evidence. Thus defendant's motion for judgment on pleadings, pursuant to Rule 12(c), is granted and the plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c), or alternatively remanding the matter for a new administrative hearing, is denied.

**SO ORDERED.**

